UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 08-99-GWU

PHYLLIS K. MYERS, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

3

alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

5

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

08-99 Phyllis K. Myers

accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Phyllis K. Myers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia and lumbar facet osteoarthritis. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Myers retained the residual functional capacity to perform her past relevant work as an office clerk, and therefore was not entitled to benefits. (Tr. 18-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 58-year-old woman with a high school education and work experience as an office clerk, could perform any jobs if she were able to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently, and stand or walk six hours in an eight-hour workday, and also had the following non-exertional restrictions. She: (1) could not crawl or climb ladders, ropes, or scaffolds; (2) could occasionally stoop, kneel, crouch, and climb ramps and stairs; (3) could not work at unprotected heights; and (4) should only occasionally perform work requiring the forceful use of the lower extremities. (Tr. 506). The VE responded that such a person could perform the plaintiff's past work, and in the alternative listed other jobs which would

08-99  Phyllis K. Myers

be available, along with the numbers in which they existed in the regional and national economies.  (Tr. 506-7).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Myers alleged disability beginning April 30, 2004 due to fibromyalgia, which she asserted caused constant aches and pains, fatigue, and other problems.  (Tr. 84, 480).  Office notes from her treating family physician, Dr. Gary A. Shearer, discuss fibromyalgia even before the alleged onset date.  (Tr. 199).  Beginning with an October 1, 2004 office note, Dr. Shearer described in detail a number of tender points around the plaintiff's body, and continued to do so in subsequent notes.  (Tr. 178-87).  Dr. Shearer prescribed strong pain medications including Percocet and Lortab, along with other medications including an anti-depressant.  (Id.).

At this point, state agency physicians reviewed the evidence and concluded that Mrs. Myers had conditions including chronic fatigue syndrome, fibromyalgia, and hyperlipidemia, but opined that she was capable of "medium" level lifting with occasional climbing of ladders, ropes, and scaffolds and a need to avoid concentrated exposure to hazards.  (Tr. 232-9, 278-84).  These sources noted that there was no opinion from a treating or examining source and felt that the plaintiff was partially credible.  (Tr. 237, 282).

08-99  Phyllis K. Myers

Subsequently, the plaintiff submitted functional capacity assessments from Dr. Shearer as well as another source.  Dr. Shearer stated that his patient carried a diagnosis of chronic fibromyalgia and limited her to lifting less than five pounds occasionally, standing or walking approximately two hours in an eight-hour day, with a break every 15 minutes, sitting four hours in an eight-hour day, with a need to lie down or stand approximately every one-half hour, "never" performing any postural activities, and having limitations on reaching, handling, fingering, pushing, and pulling as well as in working around heights, temperature extremes, fumes, humidity, and vibration.  (Tr. 288-90).  The other functional capacity assessment was submitted by a source whose signature is illegible, but also limits the plaintiff to less than full-time sitting, standing, and walking due to "a pain condition that limits her ability to tolerate various physical activities and stimuli."  (Tr. 285-7).

As previously noted, the ALJ accepted the diagnosis of fibromyalgia, and found it to be a "severe" impairment.  (Tr. 16).  In terms of functional limitations, the ALJ felt that the plaintiff's ability to engage in a wide range of daily activities contradicted her allegations that she was incapable of any activity, and cited physical findings showing a good range of motion, good strength, and no neurological deficits.  (Tr. 20-1).  He also cited the fact that the functional capacity assessments submitted by Dr. Shearer and the unknown physician "documented no findings that would support limitations such as restricted range of motion, poor

strength, etc." (Tr. 21).  The ALJ concluded that the plaintiff was more limited than found by the state agency sources, however.  (Id.).

In reviewing fibromyalgia cases, the Sixth Circuit Court of Appeals has cautioned on more than one occasion that fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." Rogers v. Commissioner of Social Security, 486 F.3d 234, 244 (6th Cir. 2007), quoting Preston v. Secretary of Health and Human Services, 854 F.2d 815, 820 (6th Cir. 1988).  While the ALJ noted that the lack of objective findings was typical for fibromyalgia at one point in his decision (Tr. 20), he proceeded to partially discredit the opinion of Dr. Shearer and other physician on this basis, a clear error (Tr. 21). He believed that their evaluations were based only on subjective complaints and that her daily activities belied these allegations.

As the Sixth Circuit noted in Rogers, the fact that a claimant was able to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercise, and watch the news were "somewhat minimal daily functions [which] are not comparable to typical work activities."  486 F.3d at 248.  In the present case, the ALJ cited similar daily activities, such as the fact that the plaintiff was attempting to attend an exercise class in 2004 and planting flowers on occasion, and that she could do some activities such as driving, shopping, cleaning the bathroom, preparing dinner, and doing dishes.  (Tr. 20).  In addition to these activities not being, in and of themselves, of a degree and extent that would necessarily support

10

08-99  Phyllis K. Myers

an ability to do sustained work activities, see Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 530 (6th Cir. 1992), there were numerous mitigating factors which were not mentioned in the ALJ's decision, such as the fact that Dr. Shearer had opined that the exercise class was not a good idea (Tr. 193) and that the plaintiff's husband had indicated that he took care of their pets, and his wife spent most of the day on the couch watching TV or sleeping (Tr. 111-12).  The meals that she prepared were sandwiches, frozen dinners, and "simple cooked meals," and when she occasionally went outside to do things, she became exhausted in one or two hours, according to her husband.  (Tr. 114).

In view of these problems, along with the fact that the treating physician's opinion was not contradicted by any reviewer with access to the entire record, a point made by the Rogers court, 486 F.3d at 245 n. 4, a remand will be required for further consideration.[1]

This the 21st day of May, 2009.



**Signed By:**
*G. Wix Unthank*
**United States Senior Judge**

---

[1] The plaintiff argues that the functional capacity assessment with the illegible signature was submitted by a treating specialist, a Dr. Stanford.  Since the case is being remanded, the plaintiff will have the ability to clarify this point.